SEAN TAMURA-SATO (SBN 254092)
LISA P. MAK (SBN 260281)
CLAIRE CHOO (SBN 252723)
MINAMI TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887
seant@minamitamaki.com
lmak@minamitamaki.com
cchoo@minamitamaki.com

*Attorneys for Plaintiff*
*And the Putative Class*

# UNITED STATES OF DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAKSEE ISANPAYU, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SK ENERGY AMERICAS, INC.; SK TRADING INTERNATIONAL CO. LTD.; VITOL INC.; and DOES 1-50,<br><br>Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 1 -

CLASS ACTION COMPLAINT

Plaintiff Saksee Isanpayu ("Plaintiff") on behalf of himself and all others similarly situated, brings this class action for damages, equitable relief, and all other relief that this Court deems just and proper against Defendants SK Energy Americas, Inc. ("SKEA"), SK Trading International Co. Ltd. ("SK Trading") (collectively, "SK"), Vitol, Inc. ("Vitol"), and Does 1-50 (collectively, the "Defendants") for violations of the Sherman Act, the Cartwright Act, and California's Unfair Competition Law.

## **INTRODUCTION**

1.      On February 18, 2015, an explosion occurred at the ExxonMobil gas refinery in Torrance, California.  At the time of this accident, the ExxonMobil gas refinery supplied about 20% of the gasoline sold in Southern California and about 10% of the gasoline sold across the state of California.

2.      This explosion caused an undersupply of refined gasoline in California.  Prices for gasoline contracts increased on the California spot markets after this accident.  Prices soon increased for consumers at the pump as well.

3.      Defendants Vitol and SK carried out an illegal price fixing scheme using the Torrance refinery explosion as cover.  Prior to the explosion, Defendants had begun secretly working together and engaging in anti-competitive behavior.

4.      Defendants Vitol and SK participated in a scheme to manipulate the spot market price for gasoline, so that they could realize windfall profits.  They also entered into agreements with each other to share the profits and disguise or hide the nature of the scheme.  Defendants carried out their price-fixing scheme through their lead spot market traders, who had been former colleagues at Vitol.

5.      Defendants carried out their scheme to the detriment of California consumers.

6.      As a result of their unlawful behavior, Vitol and SK violated Section 1 of the Sherman Act, violated California's Cartwright Act, and engaged in unlawful, unfair, or fraudulent practices in violation of California's Unfair Competition Law.

///

///

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 2 -

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 over the Sherman Act claim because this action arises under a federal statute, the Sherman Act (15 U.S.C. § 1).

8.    This Court has ancillary and pendant jurisdiction over the state law claims alleged herein, which arise under the same conduct as the Sherman Act claims.

9.    This Court also has jurisdiction pursuant to the Class Action Fairness Act, as there are over $5,000,000 in damages to the Plaintiff and proposed class members, there are well over 100 people affected, and one Plaintiff is from a different state than one Defendant.

10.    This Court has personal jurisdiction over Defendants because each, directly and/or through its ownership or control of subsidiaries:  transacted business in the United States, including in this District; is registered to do business in the state of California; had substantial aggregate contacts with the United States, including this District and/or engage in anticompetitive acts that were directed at, and had a direct, substantial, and reasonably foreseeable and intended effect of injuring, the business or property of persons and entities residing in, located in, and or doing business throughout the United States, including in this District.  Defendants conduct business throughout the United States, including in this District, and have purposefully availed themselves of the laws of the United States.

11.    Venue is proper in this district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c), because a substantial portion of the events giving rise to Plaintiff's claims occurred in this District and a substantial portion of the affected interstate commerce affected by the Defendants' scheme was deployed in this District.  Each Defendant has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal restraint of trade throughout this District.  The anticompetitive conduct alleged in this Complaint has been directed at, and has the effect of, causing injury to persons residing in, located in, or doing business in this District.

12.    Assignment to the San Francisco or Oakland Division is appropriate under Local Rule 3-2(c) because a substantial part of the conduct at issue in this case occurred in San

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

1  Francisco County.

2                                **PARTIES**

3     **I.      PLAINTIFF**

4        13.    Plaintiff Saksee Isanpayu is a resident of Honolulu, Hawai'i.  During the Class

5  Period, Mr. Isanpayu resided in San Francisco, CA.  During the Class Period, Mr. Isanpayu

6  purchased gasoline at retail prices within California for his own use and not for resale.

7     **II.     DEFENDANTS**

8     **A.      Vitol**

9        14.    Defendant Vitol Inc., ("Vitol") a Delaware Corporation, is a private company with

10  its principal place of business in Houston, Texas. Vitol Holdings B.V., founded in the

11  Netherlands, is the parent entity of Vitol.  Vitol is registered with the California Secretary of

12  State to conduct business in California.

13    **B.      The SK Defendants**

14        15.    Defendant SK Energy Americas, Inc. ("SKEA") is a California corporation with

15  its head office at 11700 Katy Freeway, Suite 900, Houston, Texas.  SK Energy Americas is a

16  wholly-owned subsidiary of SK Energy International ("SKEI").   SKEI is a Singaporean

17  corporation. SKEI is the parent entity of Defendant SK Energy Americas and is itself a

18  subsidiary of Defendant SK Trading International Co., Ltd.

19        16.    Defendant SK Trading International Co., Ltd. ("SKTI") is a South Korean

20  corporation with its head office at 26 Jongno, Jongno-gu, Seoul, South Korea.  Defendant SKTI

21  is the grandparent entity of Defendant SK Energy Americas and the parent entity of SKEI.

22  Defendant SKTI is a sister entity to SK Energy, also located in South Korea, which operates one

23  of the largest oil refineries in the world.

24        17.    The parent entity for the SK Defendants, and for SK Energy, is SK Innovation

25  Co., Ltd., a publicly-traded South Korean company.

26        18.    At all times relevant to this Complaint, Defendant SKEA was an agent and alter

27  ego of Defendant SKTI, due to the nature and extent of control that SKTI exercised over SKEA.

28        19.    At all times relevant to this Complaint, there existed a unity of interest and

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

ownership between SK Defendants such that any separateness between them had ceased to exist and SKTI controlled, dominated, managed, and operated SKEA to suit its convenience. Specifically, SKTI controlled the business and affairs of SKEA such that the distinction between the companies were mere technicalities.

20.    Additionally, at all times relevant to the Complaint, SKEA was acting within the course and scope of its agency with the knowledge, consent, permission, authorization, and ratification, either express or implied, of SKTI in performing the acts alleged in this Complaint.

**C.    The Doe Defendants**

21.    Plaintiffs are not aware of the true names and capacities of defendants, whether individual, corporate, affiliate, or otherwise, sued herein under the fictitious names DOES 1 through 50, inclusive, and therefore sues those defendants by fictitious names.  Each fictitiously named defendant is responsible in some manner for the violations of law alleged.  Plaintiffs will amend this Complaint to add the true names of the fictitiously named defendants once they are discovered, as well as the manner in which each fictitious defendant is responsible for the violations of law herein alleged, when these facts are ascertained.

**D.    Agents and Co-Conspirators**

22.    Throughout the relevant time period, each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.  Defendants are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this Complaint. Defendants have participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this Complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

**FACTUAL ALLEGATIONS**

**I.    THE CALIFORNIA GASOLINE MARKET**

23.    The California finished gasoline market is different from that of the rest of the United States.  California is geographically isolated from refining hubs in the rest of the United

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

States.  There are no pipelines that ship finished gasoline products into California.  Gasoline distributors are thus forced to ship additional refined gasoline and gasoline blending products into the state by marine vessel when local supplies are insufficient to meet demand.

24.    California also has higher vehicle emissions standards than other areas of the United States. Gasoline produced pursuant to California standards is called California Reformulated Gasoline Blendstock for Oxygenate Blending ("CARBOB").  Gasoline from other states generally does not meet CARBOB standards and cannot be readily used as a substitute.

25.    There are two common grades of CARBOB that are consumed in California and traded on the spot market. Regular CARBOB ("Regular") is the most common grade of gasoline. Premium CARBOB ("Premium") is traded with less frequency, and at a higher price, than Regular.  Regular and Premium are created when Alkylate, a gasoline blending product, is combined with other blendstocks.

26.    Absent supply disruptions, California refineries that produce CARBOB generally have production capacities that meet or exceed statewide demand.  When disruptions to the supply chain occur, the state can experience a supply shortage and a resulting increase in the price of gasoline.  This situation forces California to import gasoline that meets CARBOB standards.  It can be difficult to find immediate alternative sources of gasoline due to California's stringent CARBOB specifications and relative geographic isolation.

27.    One of the largest refineries in Southern California is located in Torrance, California (the "Torrance Refinery"). The Torrance Refinery produces approximately 20% of the gasoline sold in Southern California and 10% of the statewide supply.

**II.    GASOLINE SPOT MARKET IN CALIFORNIA**

28.    Participants in the gasoline market buy and sell product for physical delivery within a short time frame on what is known as the "spot market."  Spot markets refers to the purchase and sale of gasoline that physically changes possession at a refinery gate or at a major pricing hub for delivery.

29.    There are two major spot markets in California - one in San Francisco and one in Los Angeles for delivery in Southern California.

- 6 -

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

30.     Fuel is traded on both physical or "spot" markets where physical delivery of refined gasoline occurs, and paper or "futures" markets where traders purchase contracts to buy or sell gasoline at a future date.

31.     New York Mercantile Exchange ("NYMEX") is a futures market for delivery of gasoline to New York Harbor.  Transactions on the NYMEX are publicly reported, so pricing is transparent to market participants.

32.     Prices on the California spot markets are generally influenced by the NYMEX price, as well as by regional and local supply and demand.  For many transactions, the price for gasoline is conducted in relation to the commodity price on the NYMEX.  This relationship is called a "differential" to the "cost basis."  The spot price is measured by adding together NYMEX price and the differential of the cost basis.

33.     The spot market price is the largest component of the price on the wholesale "rack market."  The quantity of rack market transactions is conducted in the amount of fuel in a typical fuel truck, which is approximately 8,000 gallons.  Companies that re-sell fuel, as well as retailers or end users, pull fuel from the wholesale racks.  The price at the rack market is typically reflected in the retail price within a few days.  Thus, inflated rack market prices directly translate into inflated prices in the retail market and what is paid at the pump.

### III.     SPOT MARKET PRICE REPORTING IN CALIFORNIA

34.     In the California spot market, Regular and Premium are traded through non-public transactions, sometimes called over-the-counter ("OTC") trades.  OTC transactions do not occur on an open exchange like the NYMEX, so prices on the California spot markets are not immediately public.  Participants rely on price-reporting services that report spot market prices from sources that participate in the market, such as traders, refiners, and brokers.

35.     The Oil Price Information Service, LLC ("OPIS") is the most widely-used reporting service in California.  OPIS is a subscription service that publishes daily reports on industry pricing benchmarks.  OPIS calculates a daily spot price by, among other things, aggregating the trades that are reported to OPIS by market participants on a voluntary basis.  The reporting of trades is a critical component in calculating the daily spot prices.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

36.     OPIS price reporting plays a critical role in gasoline contracts that use a "floating price" determined at a future date. The parties agree on a differential above or below the spot price or prices published by OPIS.

37.     The future dates on which the floating price in contracts are set are often referred to as "pricing windows."  The pricing window can be an agreed-upon date or a date range. Pricing windows can also be tied to the dates of delivery or other conditions as indicated in the contract.

38.     There are usually many more Regular trades than Premium trades listed in Spot Market Reports.  Premium trades thus have a larger impact on the spot market price than trades of Regular in OPIS reports.

**IV.    RULES PROHIBITING FRAUDULENT AND DECEPTIVE TRADING**

39.     Spot market trading of gasoline must comply with California's commodities fraud statute.  Corp. Code, § 29504. This statute identifies certain acts as fraudulent and unlawful when buying or selling commodity contracts.  Corp. Code, § 29536, subds. (a), (b), (c), (d).

40.     Under section 29536(c), it is unlawful "[t]o willfully engage in any transaction, act, practice, or course of business which operates or would operate as a fraud or deceit upon any persons." Corp. Code § 29536(c).

41.     The federal Commodity Exchange Act makes unlawful certain types of "[p]rohibited transactions." 7 U.S.C. § 6c. A transaction that "is, of the character of, or commonly known to the trade as, a 'wash sale' or 'accommodation trade' is prohibited under the Act.  7 U.S.C. § 6c(a)(2)(A)(i).

42.     The Commodity Exchange Act also prohibits a transaction that "is used to cause any price to be rep1ied, registered, or recorded that is not a true and bona fide price." 7 U.S.C. 21§ 6c(a)(2)(B).

**V.    DEFENDANTS' PARTICIPATION IN THE CALIFORNIA SPOT MARKET**

43.     Both SK and Vitol traded refined gasoline in California during the class period. Defendants both bought and sold spot contracts for fuel products, including Regular and

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

Premium. Defendants both imported gasoline and gasoline blending components into California during the class period.

44.     Vitol employee Brad Lucas was a trader tasked with trading gasoline and gasoline blending components that were delivered via pipeline within California.

45.     Mr. Lucas reported to John Addison, a Vitol executive who in turn reported to the President of Vitol Americas.  Mr. Addison also traded gasoline and gasoline blending components that were primarily delivered via marine vessels to California.

46.     SK Energy employee David Niemann was a primary trader responsible for executing trades with respect to the California spot market for gasoline.  Another SK Energy employee, Shelly Mohammed, was a gasoline scheduler and was Mr. Niemann's subordinate.

47.     SK Energy functioned as SK Trading's California trading arm during the class period.  David Niemann and Shelly Mohammed were nominally employees of SK Energy, but SK's U.S. West Coast Trading Operation were conducted within the control and supervision of SK Trading and its subsidiaries. SK Trading also reviewed and approved key decisions to coordinate trading activities with Vital.

## VI.     COORDINATION BETWEEN VITOL AND SK

48.     SK hired Mr. Niemann in or around August 2014.  Mr. Niemann traded gasoline contracts on the California spot market.  Before working for SK, Niemann held a similar role at Vitol for approximately ten years.  Mr. Niemann and Mr. Lucas overlapped at Vitol, and maintained contact after Mr. Niemann left SK.

49.     Starting in or around late October 2014 or early November 2014, Vitol and SK reached an agreement to coordinate and/or cooperate on certain trading activities in California.

50.     Vitol and SK took steps not to reveal the nature of these agreements to other market participants.

51.     By February 2015, Mr. Niemann was the senior trader for SK with responsibility for California trading.  Mr. Lucas had the same role with Vitol.  SK and Vitol were competitors in the California gasoline market.

///

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**VII.    THE FEBRUARY 2015 EXPLOSION AT THE TORRANCE REFINERY**

52.    On February 18, 2015, there was a large explosion at the Torrance Refinery. The blast occurred in the facility's unit responsible for fluid catalytic cracking ("FCC"). This unit produces gasoline and products like alkylate.

53.    The Torrance Refinery immediately shut down the FCC and reduced production of gasoline products, including alkylate, as repair efforts and a federal investigation into the explosion commenced. As a result of this shutdown, ExxonMobil needed to replace a significant amount of lost gasoline and alkylate production in Southern California to fulfill demand.

54.    Due to this explosion, the Torrance Refinery ran at limited capacity for over a year, which had a significant long-term effect on the facility's production.

**VIII.    DEFENDANTS' MANIPULATION OF THE SPOT MARKET**

55.    In or around late February 2015, Vitol and SK began to reach agreements with each other to raise, fix, and otherwise manipulate the price of refined gasoline in California. Defendants carried out this scheme by manipulating the OPIS-reported price during pricing windows for large contracts. Defendants sought to increase profits while limiting market risk through this scheme. Defendants' unlawful trading activities included the following:

56.    Inflating Trades: Defendants engaged in trades reported to OPIS that were designed to inflate the OPIS-reported price for Regular and Premium CARBOB. Defendants sometimes used an intermediary broker to carry out this scheme, and sometimes transacted directly each other. Defendants also made strategic bids to buy and offers to sell at prices calculated to impact the OPIS price assessment.

57.    Loss-Leader Transactions: Many of the Defendants' loss-leader transactions were "leveraged" because they involved taking losses on the purchase of smaller quantities of gasoline to increase the profits on the sale of larger quantities of gasoline or alkylate by artificially increasing the OPIS-reported price.

58.    High Deal of the Day Trades: Defendants executed market inflating trades by intentionally bidding up the OPIS-reported price, often resulting in the market-spiking trade being the highest deal of the day. By transacting the high deals, SK and Vitol moved up the

- 10 -

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

CLASS ACTION COMPLAINT

1  average of the OPIS Spot Market Report and created the impression that there was strong

2  demand.

3      59.    First Deal of the Day:  Defendants also executed the first deal of the day at an

4  inflated price during key pricing windows.  This resulted in OPIS reporting an inflated purchase

5  price to other market participants.  An early purchase at an inflated price would signal high

6  demand, which discouraged other participants from submitting offers below the price for the first

7  deal of the day.

8      60.    Premium Market-Spiking Trades:  Defendants executed market-spiking trades for

9  Premium.  The trades were effective because there are generally far fewer Premium trades than

10  Regular trades.  These trades were designed to and did increase the price of alkylate.

11      61.    Defendants also engaged in trading activity designed to facilitate their scheme to

12  control pricing, including:

13      62.    Wash Trades:   After an OPIS-reported trade, Defendants conducted a second

14  trade in the opposite direction.  This negated the volume of gasoline exchanged in the OPIS-

15  reprised trade.  The facilitating trade was often not reported to OPIS.  The second trade ensured

16  that no gasoline would actually change hands as a result of the OPIS-reported trade that inflated

17  the price reported in the Spot Market Report.

18      63.    Prearranged Trades:  Defendants facilitated wash trades that occurred before the

19  OPIS-reported trade.  The facilitating trade locked in a loss while limiting the total exposure

20  faced from the reported transactions.

21      64.    Unreported Profit Sharing:   Defendants executed unreported trades to share

22  profits from their scheme.

23      65.    Defendants also entered into secret agreements to share profits.  Defendants took

24  steps not to reveal the nature of these agreements to other market participants.  Defendants called

25  their agreements "joint ventures" or "JVs."  Despite the terminology used, Vitol and SK were

26  unlawfully cooperating, engaging in prearranged transactions, and avoiding competition.

27      66.    At some point in mid-to-late 2015, Vitol and SK expanded their so-called "JVs"

28  to include alkylate.  Under this arrangement, Vitol or SK would import an alkylate cargo, but

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

1    would work together to boost the profits from its sale.

2         67.    When Vitol and SK shared profits from the alkylate cargoes, it aligned their

3    incentives to inflate the OPIS-reported prices for alkylate. These agreements thus had the effect

4    of reducing and eliminating competition between Vitol and SK.

5         68.    During the class period, Defendants' illegal conduct generated millions of dollars

6    of profits per month.  Defendants' spot price manipulation impacted CARBOB spot prices in

7    both San Francisco and Los Angeles.  Spot price manipulation increases the price of gasoline at

8    all retailer distribution outlets, whether they supply branded or unbranded gasoline.

9         69.    The price spikes caused by Defendants' illegal conduct were not consistent with

10   prior actual or perceived supply disruptions within California.  Nor were the spot market price

11   spikes explained by any actual decrease in gasoline production following Torrance Refinery

12   explosion.

13        **IX.     THE EFFECTS OF HIGHER GASOLINE PRICES ON CONSUMERS**

14        70.    California consumers paid higher gasoline prices as a result of Defendants'

15   conduct.

16        71.    Vitol and SK were effective in carrying out the goals of their scheme.  Vitol and

17   SK were able to artificially inflate the price of Regular and Premium, which generated millions

18   of dollars of additional profits per month.

19        72.    Vitol and SK manipulated the spot market prices, which translated to the "rack"

20   market prices.  Rack market prices are the wholesale prices paid when a gasoline tanker truck is

21   filled up.  Inflated rack market prices translated into inflated prices in the retail market and what

22   consumers paid at the pump.

23        73.    While Vitol and SK targeted certain contracts, the impact of the scheme on the

24   wider gasoline market was foreseeable to Vitol and SK.

25        74.    The harm to consumers was not limited to the pricing windows.  The repeated

26   inflation of the spot market price over time had residual impacts on market prices outside of the

27   pricing windows specified in the contracts.

28        75.    The illicit agreements and spot market manipulation had ripple effects that caused

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

California consumers to pay more than they should have at retail gas stations.

76.    Vitol and SK's unlawful conduct continued into 2016.  The precise end date of the scheme is unknown, but the scheme likely continued until at or around the time that Mr. Niemann left SK in late 2016.

## X.    GOVERNMENT INVESTIGATIONS

77.    Over at least the past year, the California gasoline industry has been the subject of investigation, beginning with Governor Gavin Newsom's April 22, 2019 request to the California Energy Commission (CEC) for an in-depth analysis of the causes of the increased differential between national and California gasoline prices.

78.    On May 4, 2020, Attorney General Becerra announced the filing of a lawsuit against the Defendants for alleged manipulation of California's gas prices resulting in artificially inflated retail gasoline prices.

79.    Asserting allegations substantially similar to those in this action, the Attorney General claims the Defendants took advantage of market disruption caused by the February 2015 explosion at the Torrance Refinery and violated California's antitrust laws and engaged in unlawful, unfair, and fraudulent practices that raised the price of gasoline in the state.

80.    In particular, the lawsuit accuses the Defendants of engaging in manipulative trades to increase profits by selectively reporting trades to the OPIS in order to drive up the benchmark prices of Regular and Premium gasoline in OPIS's Spot Market Report.

81.    The Attorney General further alleged the Defendants engaged in market-spiking trades to drive up the prices of large trades, while executing other trades to hide their scheme and share profits.

82.    In short, the investigations led the state of California to conclude there was sufficient evidence to pursue action against Defendants for engaging in the same unlawful conduct alleged herein.

## CLASS ACTION ALLEGATIONS

83.    Plaintiff brings this action on behalf of himself and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P. Rule 23"), seeking damages and

- 13 -

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

CLASS ACTION COMPLAINT

equitable relief on behalf of the following Class:

> All persons or entities who purchased gasoline at retail in
> California from February 18, 2015 until such time as the adverse
> effects of Defendants' anticompetitive conduct ceased (the "Class
> Period").

84.     Excluded from the Class are Defendants, their parent companies, subsidiaries, and affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, and all jurors assigned to this case.

85.     This action has been brought and may be properly maintained on behalf of the Class under the criteria of F.R.C.P. Rule 23.

86.     **Numerosity – F.R.C.P. Rule 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff, but it is likely to be in the millions.

87.     **Commonality and Predominance – F.R.C.P. Rule 23(a)(2) and (b)(3).** This action involves questions of law and fact common to the Class, which predominate over any individual questions, including:

> a. Whether Defendants contracted, combined or conspired with one another to restrain trade in the spot market for gasoline at any time during the Class Period;

> b. Whether Defendants' conduct caused the prices of gasoline sold at retail to be higher than the competitive level as a result of their restraint of trade;

> c. Whether Plaintiff and the other members of the Class were injured by Defendants' conduct and, if so, the determination of the appropriate class-wide measure of damages; and,

> d. Whether Plaintiff and other members of the Class are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such relief.

88.     **Typicality – F.R.C.P. Rule 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff, like other Class members, paid for gasoline at retail in

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

California during the Class Period.

89.     **Adequacy of Representation – F.R.C.P. Rule 23(a)(4).**  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members whom he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

90.     **Superiority – F.R.C.P. Rule 23(b)(3).**  Because of the aforementioned allegations, and in an effort to preserve judicial economy, this case will be best maintained as a Class Action, which is superior to other methods of individual adjudication of these claims.

91.     **Certification of Specific Issues – F.R.C.P. Rule 23(c)(4).**  To the extent that the Class does not meet the requirements of F.R.C.P. Rules 23(b)(2) or (b)(3), Plaintiff seeks certification of issues that will drive this litigation toward resolution.

92.     **Declaratory and Injunctive Relief – F.R.C.P. Rule 23(b)(2).** The Defendants have acted or refused to act on grounds generally applicable to Plaintiff and other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

93.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a Class Action.

## TOLLING OF THE STATUTES OF LIMITATIONS

**A.     Plaintiff's Delayed Discovery Tolled the Statute of Limitations**

94.     Plaintiff and class members had no knowledge of Defendants' combination or conspiracy, or of facts sufficient to place them on inquiry notice of the claims set forth herein until the California Attorney General filed a complaint against Defendants on May 4, 2020.

95.     Plaintiff and class members purchased refined gasoline at prices that were artificially inflated as a result of Defendants' unlawful agreement to manipulate the California refined gasoline market. They had no direct contact or interaction with any of the Defendants in this case and had no means from which they could have discovered the combination and

- 15 -

**MINAMI TAMAKI, LLP**
360 Post Street, 8ᵗʰ Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

conspiracy.

96.     Throughout the class period, and until May 4, 2020, no information in the public domain was available to Plaintiff and class members that revealed sufficient information to suggest that any of the Defendants was involved in an unlawful scheme to raise, fix, maintain and stabilize retail prices for refined gasoline.

97.     It was reasonable for Plaintiff and class members not to suspect that Defendants were engaging in any unlawful anticompetitive behavior.

98.     Plaintiff alleges a continuing course of unlawful conduct by and among Defendants, including conduct within the applicable limitations periods. That conduct has inflicted continuing and accumulating harm within the applicable statutes of limitations.

99.     For these reasons, the statutes of limitations applicable to Plaintiff's and class members' claims have been tolled with respect to the claims asserted herein.

**B.     Fraudulent Concealment**

100.    Additionally or alternatively, application of the doctrine of fraudulent concealment tolled the statutes of limitations on Plaintiff's claims.

101.    Defendants concealed their scheme by not disclosing that they were conspiring to manipulate California refined gasoline prices, and also through the trading activity described herein.  Refined gasoline is subject to antitrust and unfair competition law regulation, so it was reasonable for Plaintiff and class members to presume that California refined gasoline was being sold in a competitive market. A reasonable person under the circumstances would not have had occasion to suspect that refined gasoline was being sold at supra-competitive prices at any time during the class period.

102.    Because Defendants' scheme was affirmatively concealed by Defendants, Plaintiff and class members had no knowledge of the conspiracy or of any facts or information that would have caused a reasonably diligent person to suspect a conspiracy existed during the class period.

103.    Moreover, Defendants repeatedly misled OPIS about the true nature of their trading activities by reporting artificially high spot trades directly or indirectly between them, but

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

CLASS ACTION COMPLAINT

concealing the existence of offsetting wash trades that reduced or effectively limited any market risk in the primary trade.

104.    Therefore, by operation of Defendants' fraudulent concealment, the statutes of limitations applicable to Plaintiff's and class members' claims were tolled throughout the class period.

**FIRST CAUSE OF ACTION**
**Violations of the Sherman Antitrust Act**
**(15 U.S.C. § 1 – Injunctive Relief)**
**(Against All Defendants)**

105.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

106.    Beginning at a date presently unknown to Plaintiff, but commencing no later than the beginning of the class period, and continuing thereafter uninterrupted, Defendants and their co-conspirators engaged in an agreement, trust, contract, combination or conspiracy to fix, raise, elevate, stabilize and maintain at supra-competitive levels the price of refined gasoline sold at retail in the state of California to Plaintiff and members of the class.  The overt acts and practices in furtherance of this alleged agreement, trust, contract, combination or conspiracy include, among other things, the acts alleged above.

107.    Defendants entered into and engaged in a continuing combination, conspiracy or agreement to unreasonably restrain trade or commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially restraining competition with respect to the price of gasoline within the State of California.

108.    Defendants' activities constitute a per se violation of Section 1 of the Sherman Act.

109.    Defendants' anticompetitive and unlawful conduct has proximately caused injury to Plaintiff and members of the Class by restraining competition and thereby raising, maintaining and/or stabilizing the price of gasoline at levels above what would have occurred if competition had prevailed. For this conduct, Plaintiff and members of the Class are entitled to injunctive relief pursuant to 15 U.S.C. § 26.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**SECOND CAUSE OF ACTION**
**Violations of the Cartwright Act**
**(California Business and Professions Code section 16720 et seq.)**
**(Against All Defendants)**

110.    Plaintiffs incorporate by reference and realign the preceding allegations in the preceding paragraphs as though fully set forth herein. Plaintiffs bring this claim against all Defendants, including both named and Doe Defendants.

111.    Beginning at a time presently unknown to Plaintiffs, but commencing no later than the beginning of the class period, and continuing thereafter uninterrupted, Defendants entered into and engaged in an unlawful trust in restraint of trade and commerce, as described above, in violation of California Business and Professions Code section 16720 et seq. (hereafter "Section 16720").

112.    This scheme consisted, without limitation, of a continuing agreement, understanding, or concert of action among Defendants, the substantial terms of which were to fix, maintain, control, increase, inflate, tamper with, or otherwise manipulate and make artificial the benchmark prices of Regular and Premium that OPIS published in its Spot Market Report to market participants. At all relevant times, Defendants were competitors in this market.

113.    For the purpose of forming and effectuating the unlawful trust, Defendants:

•    Engaged in trades with each other and with third parties that were reported to OPIS for the purpose of fixing, maintaining, controlling, increasing, inflating, tampering with, or otherwise manipulating and making artificial, the benchmark prices of Regular and Premium published in OPIS's Spot Market Report in order to profit on other OPIS-based positions Defendants maintained;

•    Executed facilitating trades to hide or disguise the nature of their market manipulation scheme, to limit or eliminate bona fide market risk on the reported trades, and to share ill-gotten profits amongst themselves; and

•    Entered into anticompetitive agreements with each other.

114.    The scheme has had, among other things, the following effects:

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

CLASS ACTION COMPLAINT

• Affected the value of contracts for Regular, Premium, and alkylate that were based on artificially inflated benchmark prices;

• Suppressed competition among the Defendants for the purchase and sale of Regular, Premium, and alkylate; and

• Affected the wholesale and retail market prices for Regular and Premium in California, which are based on and affected by California spot market prices.

115. Defendants' scheme constitutes a per se violation of Section 16720.

116. Defendants' scheme was carried out and effectuated within the State of California, and the resulting impact on California's spot, wholesale, and retail markets for finished gasoline, caused by Defendants' unlawful conduct, injured natural persons in this state.

117. As a result of Defendants' violations of Section 16720, natural persons residing in the State of California were injured in their business and property in that they paid more for finished gasoline in California than they would have in the absence of Defendants' unlawful conduct.

118. Plaintiffs brings this action pursuant to California Business and Professions Code section 16760 and seek treble damages and the costs of suit, including reasonable attorneys' fees. Plaintiffs also seek injunctive relief pursuant to California Business and Professions Code section 16754.5.

## THIRD CAUSE OF ACTION
### Violations of the Unfair Competition Law
**(California Business and Professions Code § 17200 et seq.)**
**(Against All Defendants)**

119. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein. Plaintiffs bring this claim against all Defendants, including both named and Doe Defendants.

120. Defendants committed acts of unfair competition, as described above, in violation of California Business and Professions Code section 17200 (hereafter "Section 17200").

121. Defendants' unlawful, unfair, or fraudulent business acts or practices, as described above, constitute unfair competition within the meaning of Section 17200, and include, without

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

limitation, the following:

• Violating Section 16720, as set forth above;

• Engaging in, whether in concert or not, wash sales, accommodation trades, prearranged trades, and transactions made for the purpose of manipulating the benchmark prices reported on the California gasoline spot market, all in violation of California's commodities fraud statute (Corp. Code, §§ 29535, 29536, 29537, 29538);

• Engaging in, whether in concert or not, wash sales, accommodation trades, prearranged trades, and transactions made for the purpose of manipulating the benchmark prices reported on the California gasoline spot market, all in violation of the Commodity Exchange Act (7 U.S.C. § 1 et seq.).

122. As a result of Defendants' violations of Section 17200, California consumers were injured in their business and property in that they paid more for finished gasoline in California than they would have in the absence of Defendants' unlawful, unfair, or fraudulent conduct.

123. Accordingly, Plaintiffs bring this action pursuant to California Business and Professions Code section 17200 and seek injunctive relief, restitution, and civil penalties pursuant to California Business and Professions Code sections 17203 and 17206.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

124. That judgment be entered in favor of Plaintiffs and against Defendants;

125. That the Court adjudge and decree that Defendants' contracts, agreements, or combination constitute an illegal restraint of trade in violation of the Cartwright Act, section 16720 et seq. of the Business and Professions Code;

126. That the Court adjudge and decree that Defendants' acts violate the Unfair Competition Law, section 17200 et seq. of the Business and Professions Code;

127. That Plaintiffs be awarded their damages, trebled, in an amount according to proof;

128. That Plaintiffs be awarded restitution for their losses as a result of Defendants' acts in violation of state antitrust or consumer protection statutes and laws, including section

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

17200 of the Business and Professions Code;

129.     That Plaintiffs be awarded pre- and post-judgment interest, and that the interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

130.     Pursuant to Business and Professions Code section 16754.5, that the Court enter all orders necessary to prevent Defendants, as well as Defendants' successors, agents, representatives, employees, and all persons who act in concert with Defendants from engaging in any act or practice that constitutes a violation of the Cartwright Act, section 16720 et seq. of the Business and Professions Code, including such mandatory injunctions as may be reasonably necessary to restore and preserve fair competition;

131.     Pursuant to Business and Professions Code section 17203, that the Court enter all orders necessary to prevent Defendants, as well as Defendants' successors, agents, representatives, employees, and all persons who act in concert with Defendants from engaging in any act or practice that constitutes unfair competition in violation of Business and Professions Code section 17200;

132.     Pursuant to Business and Professions Code section 17203, that the Court enter all orders or judgments as may be necessary to restore to any person in interest any money or other property that Defendants may have acquired by violations of Business and Professions Code section 17200, as proved at trial;

133.     Pursuant to Business and Professions Code section 17206, that the Court assess a civil penalty of two thousand five hundred dollars ($2,500) against Defendants for each violation of Business and Professions Code section 17200, as proved at trial;

134.     That Plaintiffs recover their costs and reasonable attorneys' fees; and

135.     That the Court grant other legal and equitable relief as it may deem just and proper, including such other relief as the Court may deem proper to redress the alleged violation in order to dissipate the anticompetitive effects of Defendants' violations, and to restore competition.

///

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

CLASS ACTION COMPLAINT

1

## **JURY TRIAL DEMAND**

2      Plaintiffs hereby demand a trial by jury for all causes of action, claims, or issues in this

3  action that are so triable.

4

5

6  Dated:  July 13, 2020                MINAMI TAMAKI LLP

7

8                                By: _____

9                                   SEAN TAMURA-SATO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

CLASS ACTION COMPLAINT